IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARLOS HERNANDEZ-ARREDONDO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 10-cv-0875-MJR-SCW |
| LISA J.W. HOLLINGSWORTH, | ) |
| BRYERSON, EDGE, ORMANDY, | ) |
| BEHLE, | ) |
| | ) |
| Defendants. | ) |

# REPORT & RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

In November 2010, *pro se* Plaintiff Carlos Hernandez-Arredondo (who goes by "Hernandez," *see* Dkt. 66, p. 13) sued nine federal Bureau of Prisons ("BOP") employees for allegedly violating his constitutional rights while Hernandez was incarcerated at USP Marion, a federal prison in this district. Before the Court is the Motion for Summary Judgment (Dkt. 45) filed by the five remaining Defendants, who argue that Hernandez failed to exhaust his administrative remedies.[1]

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the United States Bureau of Prisons before filing suit. For the following reasons, it is **RECOMMENDED** that the defendants' motion (Dkt. 45) be **GRANTED**, and the instant case be dismissed *without prejudice*.

---

[1] Defendants style their motion a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." In *Pavey*, the Seventh Circuit Court of Appeals rejected as unpersuasive the Ninth Circuit Court of Appeals' approach of raising the affirmative defense of failing to exhaust remedies as an "unenumerated 12(b) motion." **Pavey v. Conley (Pavey I), 544 F.3d 739, 741 (7th Cir. 2008).** As a result, this Court typically handles the issue of exhaustion on a motion for summary judgment, not a motion to dismiss.

1

**PROCEDURAL HISTORY**

Hernandez, a current inmate at USP Florence in Colorado and former resident of USP Marion in Illinois, filed the instant lawsuit on November 3, 2010. In his Complaint, Hernandez alleged that he was denied Due Process, that he was retaliated against, that Defendants conspired to retaliate against him, and that Defendants were deliberately indifferent to his mental health needs — all in violation of Hernandez's rights under the U.S. Constitution. Hernandez requested declaratory judgment, injunctive relief, and money damages totaling $990,000. Pursuant to 28 U.S.C. § 1915A, District Judge Reagan performed a preliminary review of the Complaint and held that some of Hernandez's claims were subject to summary dismissal. (Dkt. 8). Three counts (against five total Defendants) survived threshold review as follows:

In Count 1, Hernandez alleges that Defendants Hollingsworth (Marion's warden) and Ormandy (a captain at Marion) violated his Fifth Amendment due process rights by denying him any opportunity to challenge his twenty-month confinement in segregation in Marion's Special Housing Unit (SHU). Count 2 alleges that Hollingsworth, Ormandy, Behle (a Case Manager), Bryerson (a Unit Manager), and Edge (a Case Manager Coordinator) retaliated against Hernandez by referring him to a Special Management Unit (SMU) — in which the duration of Hernandez's segregation would be lengthened — because Hernandez filed grievances regarding his time in SHU. Closely related to Count 2 is Count 3, which contains separate allegations that all five defendants engaged in a conspiracy to retaliate against Hernandez. Defendants filed the instant motion in November 2011. The motion ripened with Mr. Hernandez's response on January 9, 2012.

**LEGAL STANDARDS**

1. **Summary Judgment Standard**

Summary judgment — which is governed by FEDERAL RULE OF PROCEDURE 56 — is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as

2

to any material fact and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).**[2] The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings")**. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. ***Anderson,* 477 U.S. at 248.** A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. ***Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001).  *See also Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events") (internal quotation marks omitted).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." ***Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010).  *Accord Anderson,* 477 U.S. at 248 (material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

---

[2] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard.  ***Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011)**.

And generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. **Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008).** As to contested facts material to the exhaustion analysis, the summary judgment standard is different. When there are factual disputes regarding exhaustion, the Court holds an evidentiary hearing and may allow limited discovery. **Pavey v. Conley ("Pavey I"), 544 F.3d 739, 742 (7th Cir. 2008).** In the context of such a hearing, the Court must resolve any factual disputes material to the issue. **Id.**

### 2. PLRA Exhaustion Requirement

Hernandez's claims are subject to the Prison Litigation Reform Act's (PLRA's) exhaustion requirement: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a).** An inmate must take all the steps required by his prison's grievance system in order to properly exhaust his administrative remedies. **Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); Pozo v. McCaughtry, 286 F.3d 1022, 1023–24 (7th Cir. 2002).** The purpose of the exhaustion requirement is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).**

While exhaustion is not jurisdictional *per se*, it is a precondition to suit. **Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999).** Grievances must be exhausted *before* federal litigation commences. **Ford, 362 F.3d at 398 ("[I]t is essential to keep the courthouse doors closed until [administrative] efforts have run their course.").**

Though the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement, **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006)**, the PLRA's plain language is

4

clear that an inmate must exhaust only those administrative remedies that are available to him, **42 U.S.C. § 1997e(a)**. Administrative remedies become "unavailable" when prison officials fail to respond to a properly-filed inmate grievance, **Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002)**, or when prison employees otherwise use affirmative misconduct to prevent a prisoner from exhausting, **Dole, 438 F.3d at 809. See also Ducey v. Flagg, No. 08-cv-0691-MJR, 2009 WL 3065045, at *4 (S.D. Ill. Sept. 21, 2009) ("[P]rison officials can easily thwart an inmate's attempt to exhaust administrative remedies simply by failing to respond to his or her grievances.").** Defendants bear the burden of proving the exhaustion requirement, which is an affirmative defense. **Pavey v. Conley (Pavey II), 663 F.3d 899, 903 (7th Cir. 2011).**

In the Seventh Circuit, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge. **Pavey I, 544 F.3d at 740–41.** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit has set forth the following sequence:

> (1) the district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

**Id. at 742**.

### 3. Exhaustion in Federal Prisons

The detailed administrative remedy procedure for federal BOP inmates is set forth in 28 C.F.R. §§ 542.10–18. **See Kaba, 458 F.3d at 681–82.** An inmate must first attempt to resolve his complaint informally. **28 C.F.R. § 542.13.** At USP Marion, the informal complaint is lodged on a "BP-8" form. (*See* Dkt. 66, 22:10–11). Should the informal complaint fail, the inmate has 20 days from the complained-of event to file a formal Administrative Remedy Request to the warden on a "BP-9" form. **28 C.F.R. § 542.14(a).** If not satisfied with the Warden's response, the inmate may file (on a "BP-10" form) a written appeal to the BOP's Regional Director "within 20 calendar days of the date the Warden signed" the BP-9 response. **28 C.F.R. § 542.15(a).** Finally, if still unsatisfied, the inmate may — within 30 days of the Regional Director's response — file (on a "BP-11") an appeal to the BOP's General Counsel. **28 C.F.R. § 541.15(a).** "Appeal to the General Counsel is the final administrative appeal." **28 C.F.R. § 541.15(a).**

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Hernandez filed a BP-9 at USP Marion on May 20, 2010. The May BP-9 includes claims that Hernandez received inadequate Due Process protections during his long-term confinement in Marion's SHU. (*See* Dkt. 55-2, pp. 6–7). Warden Hollingsworth denied Hernandez's request for an administrative remedy on June 9, 2010. (Dkt. 45-1, p. 26). On June 15, 2010, Hernandez appealed Hollingsworth's decision to the BOP's Regional Director, who denied the appeal. (Dkt. 45-1, 27–28). Then, in October 2010, Hernandez appealed the Regional Director's decision to the BOP's General Counsel, who denied Hernandez's appeal as moot (since he was no longer housed in USP Marion's SHU). (Dkt. 45-1, pp. 29–30). The General Counsel made its final ruling on February 11, 2011 — over three months after Hernandez filed this suit. (Dkt. 45-1, p. 30).

The instant motion is premised on Defendant's proposition that, while Hernandez's May BP-9 is congruent with Count 1 (Hernandez's Due Process claims), Hernandez failed to grieve

Count 2 (the retaliation claims) or Count 3 (the conspiracy claims). In response on that proposition, Hernandez argues that, once he learned about the defendants' retaliatory and conspiratorial conduct, he attempted to grieve those issues, but was thwarted.

An initial reading of the parties' arguments indicated that disputed facts — whether Hernandez was thwarted in attempting to grieve the issues underlying Count 2 and Count 3 — needed examination. The Court therefore held an evidentiary hearing in March 2012. But upon further review, the motion turns on legal principles and undisputed facts pertaining to Hernandez's May BP-9. That grievance form contained all the information required to fulfill the PLRA's exhaustion requirement. But, unfortunately for Mr. Hernandez, he had not fully exhausted his administrative remedies by the time he filed this case.

1. **Contents of Hernandez's May 2010 BP-9**

Hernandez's May BP-9 contained all the information needed to fulfill the PLRA's exhaustion requirement. The procedures a federal prisoner must follow, including the necessary contents of any filed grievance, come not from the PLRA but from federal administrative law. ***Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002).** An inmate "shall place a single complaint or a reasonable number of closely related issues on the form," and "must complete a BP-9 "with all requested identifying information." **28 C.F.R. § 542.14(c)(2)–(3).** The BP-9 contains a box labeled "Part A – INMATE REQUEST" — it does not ask the inmate to provide specific information identifying each potential cause of action that could stem from the grieved events. Nor could it: "no administrative system may demand that the prisoner specify each remedy later sought in litigation." ***Strong*, 297 F.3d at 649–50. *See id.* (a prisoner must "exhaust a *process* and not a *remedy.*") (emphasis in original).** Insofar as Hernandez's BP-9 was required to contain certain content to exhaust his remedies for the purposes of Count 2 and Count 3, the question is whether he "object[ed] intelligibly to some asserted shortcoming." ***Id.* at 650.** He did.

7

Here, Hernandez grieved (on the May BP-9) that the decision to transfer him to a Special Management Unit was "accepted by Marion staff: Warden Hollingsworth, Captain Ormandy, C.M.C. Edge, Unit Manager Bryerson, and case manager Belle." (Dkt. 55-2, p. 6). "Since then [Hernandez] has been sitting at Marion's S.H.U." (*Id.*). Hernandez further claimed that he had been "singled out," and was waiting too long (in segregation) for his transfer to S.M.U. (Dkt. 55-2, p. 7). His BP-9 narrates the events that gave rise to the instant lawsuit. The grievance form did not formally label each potential constitutional claim, but that does not matter. USP Marion officials had the opportunity to address complaints about Hernandez's stay in SHU and his assignment to SMU. That opportunity is all that is required by federal administrative law and, therefore, the PLRA. **Maddox v. Love, 655 F.3d 709, 721 (7th Cir. 2011) ("Grievances are intended to [allow prisons] to address complaints about the program it administers before being subjected to suit . . ."). See also Riccardo v. Rausch, 375 F.3d 521, 5 (contents of a grievance adequate for exhaustion purposes where they "hinted at problems in prison administration."); Belk v. Fed. Bureau of Prisons, No. 07-cv-0301, 2008 WL 2600793, at \*2 (W.D. Wis. Jan. 22, 2008) ("it was enough that plaintiff identified the problem, which was that defendant was acting illegally").**

In short, Hernandez argued — in response to Defendants' attempt to cleave the Due Process claims from the retaliation and conspiracy claims — that his attempt to grieve Defendants' retaliatory and conspiratorial conduct were thwarted. But he never needed to grieve those claims separately. The May BP-9 adequately described all that prison officials needed to be alerted "to the nature of the wrong for which redress [was] sought." **Strong, 297 F.3d at 650.** Hernandez did not, however, comply with another requirement: that he fully exhaust his remedies before bringing his claims to federal court.

**2. Hernandez's Suit was Premature**

Hernandez's lawsuit falls squarely in the crosshairs of controlling caselaw that requires a prisoner to fully exhaust his remedies before bringing suit in federal court. In *Perez*, for example, a prisoner's suit was dismissed when he had not exhausted his remedies before filing suit. **Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535–38 (7th Cir. 1999).** The PLRA, the Seventh Circuit explained, gives state officials the benefit of *not* facing a decision on the merits should a prisoner fail to exhaust. **Id. at 536.** That benefit is lost if judicial and administrative claims go forward simultaneously. **Id.** The Court of Appeals underscored that principle in *Ford*, where a panel affirmed summary judgment against a prisoner who had similarly "jumped the gun." **Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004).** The PLRA is meant to encourage the resolution of matters out of court. "To prevent . . . subversion of [such] efforts . . . , it is essential to keep the courthouse doors closed until those efforts have run their course." **Id.** In *Ford*, the prisoner's filing was fatally premature even though he filed in the district court only two days before the prison system announced its final decision. **Id.**

Here, Hernandez was three months premature: he filed suit on November 3, 2010, but the BOP's General Counsel — the last step in the federal exhaustion process — did not make its final ruling on Hernandez's May BP-9 until February 11, 2011. (Dkt. 45-1, p. 30). Hernandez filed far more prematurely than did the *Ford* plaintiff, and the result is the same: the government "made a process available to" Hernandez; "he had to stick with that process until its conclusion rather than make a beeline for the court." **Ford, 362 F.3d at 400. See also Perez, 182 F.3d at 537 ("a case filed before exhaustion has been accomplished must be dismissed."); Pozo v. McCaughtry, 286 F.3d 1022, 1023–24 (7th Cir. 2002) ("[U]nless the prisoner completes the administrative process, . . . exhaustion has not occurred. Any other approach would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat"** the objective of

9

the PLRA). Hernandez should have waited until after the General Counsel's decision came down. His case should therefore be dismissed without prejudice. **See Ford, 362 F.3d at 401 ("We . . . hold that *all* dismissals under [42 U.S.C.] § 1997e(a) should be without prejudice.") (emphasis in original).**

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Dkt. 45) be **GRANTED,** and that Hernandez's suit be **DISMISSED WITHOUT PREJUDICE.** It is further **RECOMMENDED** that Hernandez's pending Motion for Leave to Amend his Complaint (Dkt. 56) be **DENIED as MOOT.** If he wishes, Mr. Hernandez may file a new complaint, and it is **RECOMMENDED** that Mr. Hernandez, who is already paying off the $350.00 filing fee for this case, not be required to pay the filing fee for a new complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation within **fourteen (14) days** of being served with a copy. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. **See, e.g., Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, <u>**objections to this Report and Recommendation must be filed on or before July 16, 2012**</u>.

**IT IS SO RECOMMENDED.**
DATE: <u>June 29, 2012</u>          <u>/s/ *Stephen C. Williams*</u>
                                    **STEPHEN C. WILLIAMS**
                                    United States Magistrate Judge